Shari BIGAY, Respondent,

v.

Timothy A. GARVEY, M.D.,
petitioner, Appellant,

Gary Banks, M.D., Respondent,

Jeffrey Dick, M.D., Defendant,

Regents of the University of Minnesota,
d/b/a/ The University of Minnesota
Hospital and Clinic, Respondent.

No. C9–96–1033.

Supreme Court of Minnesota.

March 12, 1998.

Charles E. Lundberg, Bassford, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for appellant.

Theodore G. Gudorf, O'Loughlin & Gudorf, Dayton, OH, Geoffrey P. Jarpe, Maun & Simon, P.L.C., St. Paul, for respondent Shari Bigay.

William M. Hart, Joseph W.E. Schmitt, Robert M. Frazee, Meagher & Geer, P.L.L.P., Minneapolis, for respondent Gary Banks.

Barry G. Vermeer, Anne T. Johnson, Gislason, Dosland, Hunter & Malecki, P.L.L.P.,

Minnetonka, for respondent Regents of Univ. of Minn.

## OPINION

BLATZ, Chief Justice.

On June 2, 1994, plaintiff Shari Bigay initiated a medical malpractice action for negligent care and treatment against Dr. Timothy Garvey, Dr. Gary Banks, and the Regents of the University of Minnesota, d/b/a the University of Minnesota Hospital and Clinic (UMHC). Bigay's complaint alleged that she sustained injuries during spinal fusion surgery performed at UMHC on June 3, 1992. Bigay later sought to amend her original complaint to add a negligent nondisclosure claim. The defendants argued that the amended complaint did not relate back to the original complaint as required by Minn. R. Civ. P. 15.03, and, in the alternative, if it did relate back, it was nonetheless barred by the statute of limitations. The district court granted the defendants' motion to dismiss the amended complaint. The court of appeals reversed, concluding that the amended complaint did relate back and remanded the case to the district court. We reverse the court of appeals.

Plaintiff Shari Bigay first met with Dr. Timothy Garvey at the Veterans' Administration Medical Center in the spring of 1992 to seek treatment for her lower back pain. Dr. Garvey diagnosed degenerative disc changes at spinal level L5–S1 and foraminal stenosis, and he recommended spinal fusion surgery to alleviate Bigay's lower back pain. Dr. Garvey explained the risks of surgery to Bigay, including blood loss, nerve damage, failure to alleviate pain, and even death. Dr. Garvey did not tell Bigay that there was a risk of bowel perforation. On May 28, 1992, Bigay signed a written consent for the surgery.

On June 3, 1992, Dr. Garvey and Dr. Gary Banks, a resident physician, performed the spinal fusion surgery on Bigay at UMHC. The procedure involved removing the diseased disc material and fusing the spine with a graft of morcellized bone. Dr. Garvey testified that the surgery itself was uneventful, but after the surgery Bigay experienced abdominal pain and bloating. A specialist, Dr. John Delaney, was consulted and he subsequently performed an exploratory laparotomy that revealed three lacerations in the ileum (small intestine) and one laceration in the colon. These lacerations resulted in peritonitis, an infection caused by the leakage of fecal material in the peritoneal cavity. Dr. Delaney then performed a colostomy and ileostomy to stop the spread of fecal peritonitis. Further complications required additional surgery.

On June 2, 1994, Bigay filed a complaint against Dr. Garvey, Dr. Banks, and UMHC, seeking damages for negligent care and treatment. Specifically, the complaint alleged that Drs. Garvey and Banks were negligent in their performance of the spinal fusion surgery, causing the perforations of her ileum and colon that led to peritonitis. The complaint further alleged that Dr. Garvey and UMHC negligently failed to supervise Dr. Banks during surgery.

In late March 1995, Bigay served the defendants with an amended complaint, adding a claim for damages against Dr. Garvey, Dr. Banks, and UMHC for negligent nondisclosure of alternative risks and treatment. The amended complaint alleged that the surgical procedure technique utilized by Dr. Garvey on Bigay was experimental and that Dr. Garvey failed to inform Bigay of that fact.

In May 1995, the district court allowed Bigay to amend her original complaint, but reserved ruling on the issue of whether the negligent nondisclosure claim was barred by the statute of limitations. On the first day of trial, November 1, 1995, the district court granted the defendants' motion to dismiss the amended claim. After the close of Bigay's case-in-chief, the district court directed a verdict for UMHC on all of the claims, including the negligent supervision claim. The jury returned a verdict on the remaining issues, finding that Dr. Garvey and Dr. Banks were not negligent in their care and treatment of Bigay.

The court of appeals reversed the district court's pretrial order dismissing Bigay's added claim for negligent nondisclosure and re-

manded. *Bigay v. Garvey,* 562 N.W.2d 695, 704 (Minn.App.1997). On appeal, Dr. Garvey argues that the negligent nondisclosure claim does not relate back to the negligent care and treatment claim under Minn. R. Civ. P. 15.03.[1] Whether a party satisfies the requirements of Minn. R. Civ. P. 15.03 to have an amended complaint relate back to the original complaint is a question of law, subject to de novo review by this court. *Carlson v. Hennepin County,* 479 N.W.2d 50, 53 (Minn.1992).

Minnesota law imposes a two-year statute of limitations on any cause of action against physicians, surgeons, and other health care professionals. Minn.Stat. § 541.07(1) (1996). Bigay served her original complaint alleging negligent care and treatment in the performance of the spinal fusion surgery on June 2, 1994, just within two years of the June 3, 1992 surgery. Bigay's amended complaint alleging negligent nondisclosure was served on March 29, 1995, well beyond the two-year statute of limitations governing such actions. Nonetheless, an otherwise untimely claim can be saved from the statute of limitations if it is held to relate back to the date of original timely pleading. *See* Minn. R. Civ. P. 15.03.

■ In determining whether an amended claim relates back to the date of the original pleading, Minn. R. Civ. P. 15.03 applies the same standard as Fed.R.Civ.P. 15(c). The relevant consideration is whether the claim asserted in the amended pleading "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." In recognizing this consideration, this court has noted that relation back under Rule 15.03 is not limited to amendments which do not state a new cause of action:

> The principle of relation back of amended pleadings existed in prior law, but it was limited to an amendment which did not state a new cause of action. The harshness of the rule was modified by a liberal construction of a "cause of action". In

accord with this liberal application of the principle, the rule requires only that the amendment arise out of the "conduct, transaction, or occurrence" set forth in the original pleading.

*Heyn v. Braun,* 239 Minn. 496, 501–02, 59 N.W.2d 326, 330 (1953) (citation omitted).

■ In the instant case, the court of appeals reasoned that the original claim of negligent care and treatment in the performance of the surgery and the amended claim of negligent nondisclosure "both arise from the same general conduct and occurrence that caused Bigay's injury and are based on a common factual transaction: surgical treatment for Bigay's lower back pain." *Bigay,* 562 N.W.2d at 700. Therefore, the court of appeals concluded that the original complaint alleging negligence in the performance of surgery provided sufficient notice of the facts underlying the negligent nondisclosure claim and that the amended complaint related back to the original complaint. *Id.* We disagree with the court of appeals' conclusion that the presurgery consultation, diagnosis, recommendations for treatment, and actual surgery can be viewed as one continuous transaction or occurrence.

Three factors are generally considered in determining whether a claim arose out of the same conduct, transaction, or occurrence: whether the defendant had notice of the claim that the plaintiff is now asserting; whether the plaintiff will rely on the same kind of evidence offered in support of the original claim to prove the new claim; and whether unfair surprise to the defendant would result if the court allowed the amendment to relate back. *See* 3 James Wm. Moore, *Moore's Federal Practice* § 15.19[2] (3d ed.1997).

Many courts emphasize that the most important consideration underlying Rule 15.03 is the idea of notice. Statutes of limitations protect a defendant by requiring an action to be brought within a reasonable time "so that

1. Although Dr. Banks and UMHC are respondents, they are not in dispute with Dr. Garvey regarding the relation back of the amended complaint. Dr. Banks and UMHC argue separately that in the event that this court holds that the amended negligent nondisclosure claim does relate back, neither Dr. Banks nor UMHC is a proper party to such a claim. Because we hold that the amended complaint does not relate back, we need not reach the separate issue of whether Dr. Banks or UMHC could be liable for negligent nondisclosure.

a defendant will have a fair opportunity to prepare an adequate defense." *Swenson v. Emerson Elec. Co.*, 374 N.W.2d 690, 696 (Minn.1985) (quoting Note, *Federal Rule of Civil Procedure 15(c): Relation Back of Amendments*, 57 Minn. L.Rev. 83, 84 (1972)). Therefore, if both the original pleading and the amended pleading are based on common facts and rely on the same type of evidence, then "the party has received all the notice and protection that the statute of limitations requires," even if the amended pleading includes a different legal theory or claim arising out of the same transaction or occurrence. *Moore's Federal Practice* at § 15.19[1].

This court recognized the importance of notice in its most recent decision addressing the relation back principle with respect to amendments stating a new cause of action. *See Swenson*, 374 N.W.2d at 695–96. In *Swenson*, Edward Swenson died from an explosion that occurred after he attempted to relight the pilot light on a water heater manufactured and distributed by the defendants. *Id.* at 693. The original theories of recovery were based upon negligence in design and manufacture of the water heater, negligent failure to warn of the defect, breach of the implied warranties of merchantability and fitness, and strict liability. The amended complaint sought damages under the federal Consumer Product Safety Act (CPSA). *Id.* This court held that the amended claim related back to the original claim because "the defendants had sufficient notice in the original complaint of the essential elements of the CPSA claim to justify application of the relation-back doctrine and therefore to prevent the claim from being barred by the statute of limitations." *Id* at 696.[2]

There is no Minnesota case law on the particular issue of whether a negligent nondisclosure claim properly relates back to a negligent care and treatment claim. Although the court of appeals cites to numerous other jurisdictions which have held that a negligent nondisclosure claim does relate back to a negligent care and treatment claim, the reasoning underlying the majority of these decisions is based on whether or not the defendant had notice in the original complaint. *See Jolly v. Russell*, 203 A.D.2d 527, 611 N.Y.S.2d 232, 233 (N.Y.App.Div.1994) (holding that in order for a lack of informed consent claim to relate back to a negligent care and treatment claim, the original pleading must provide notice); *Estrada v. Jaques*, 70 N.C.App. 627, 321 S.E.2d 240, 245 (1984) (stating that "the decisive test for relation back remains *notice* in the original pleading of the transactions or occurrences to be proved pursuant to the amended pleading"); *Azarbal v. Medical Ctr. of Del., Inc.*, 724 F.Supp. 279, 283 (D.Del.1989) (stating that "the most important factor in determining if a proposed amendment relates back to a prior pleading is whether the earlier pleading gave the other party adequate notice of the occurrence forming the basis for the amended claim"); *Moore v. Baker*, 989 F.2d 1129, 1132 (11th Cir.1993) (holding that there was no relation back because the allegations in the original complaint alleging lack of informed consent contained nothing that would put the defendant on notice that the new claims of negligence in care and treatment might be asserted).

In the instant case, Bigay's original complaint contained nothing to put the defendants on notice that a negligent nondisclosure claim might be asserted. The original complaint focuses only on the defendants' actions in performing the surgery itself; it makes no mention of Dr. Garvey's actions in presurgery consultations, when Bigay's consent was obtained. Moreover, in determining whether a claim arose out of the same conduct, transaction, or occurrence, we note that Bigay would not rely on the same kind of evidence offered in support of the original claim for negligent care and treatment in

---

**2.** The CPSA claim required the plaintiff to show four elements: a defective product; a hazard created by the defect; knowledge on the part of the defendants of the defect; and a knowing violation of the Consumer Product Safety Commission's (CPSC) reporting requirement. *Swenson*, 374 N.W.2d at 696. This court stated that "[o]nly the allegation that the defendants knowingly violated the CPSC reporting requirement was not essentially present in the original complaint," and concluded that the plaintiff's late assertion of the CPSA claim did not infringe upon the defendant's preparation of an adequate defense. *Id.*

performing the surgery to prove the new claim for negligent nondisclosure. The defendants' alleged negligence during surgery, in puncturing Bigay's colon and ileum, involves separate and distinct conduct from the alleged negligence in failing to inform Bigay that the procedure was experimental. To prevail on her negligent nondisclosure claim, Bigay would have to prove that Dr. Garvey knew that his technique of performing the procedure was experimental, that he failed to disclose this fact, and that the undisclosed experimental nature of the procedure resulted in harm.[3] In contrast, to prevail on her claim for negligent care and treatment in performing the surgery, Bigay needed to show that the defendant departed from the general standard of care in the medical community in performing the surgery and that the departure resulted in harm.[4]

For these reasons, we conclude that the amended complaint does not relate back to the original complaint. Accordingly, we reverse the court of appeals and dismiss the amended complaint.

Reversed.

PAGE and GILBERT, JJ., took no part in the consideration or decision of this matter.

---

3. To establish a claim of negligent nondisclosure, a plaintiff must show five elements: (1) a duty on the part of a physician to know of a risk or alternative treatment plan; (2) a duty to disclose the risk or alternative program; (3) a breach of that duty; (4) causation, i.e., the undisclosed risk must materialize in harm; and (5) damages. *Plutshack v. University of Minn. Hosps.,* 316 N.W.2d 1, 9 (Minn.1982)

4. To establish a claim for negligent care and treatment, a plaintiff must introduce expert testimony demonstrating: (1) the standard of care in the medical community applicable to the particular defendant's conduct; (2) that the defendant departed from the standard of care; and (3) that the departure from the standard of care directly caused the plaintiff's injury. *Plutshack,* 316 N.W.2d at 5.